## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UPMC, a Pennsylvania Nonprofit, Non-Stock Corporation, | CIVIL DIVISION |
| Plaintiff, | Civil Action No.: |
| v. | |
| CITY OF PITTSBURGH, a Pennsylvania Second Class City and Home Rule Municipality; and LUKE RAVENSTAHL, in his Official Capacity as Mayor, City of Pittsburgh | |
| Defendants. | |

## COMPLAINT

AND NOW, comes Plaintiff, UPMC, a Pennsylvania Nonprofit, Non-Stock Corporation ("UPMC"), by and through its attorneys, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, and hereby files this Complaint against The City of Pittsburgh, a Pennsylvania Second Class City and Home Rule Municipality (the "City"), and Luke Ravenstahl, in his Official Capacity as Mayor, City of Pittsburgh.  In support of this Complaint, UPMC states as follows:

### Parties

1.      Plaintiff UPMC is a Pennsylvania nonprofit corporation and qualifies as a tax exempt organization under Internal Revenue Code (I.R.C.) §501(c)(3).   Its principal place of business is 600 Grant Street, Pittsburgh, PA 15219.

2.      UPMC is the parent and supporting organization for more than 50 other nonprofit charitable organizations, each existing as a separate and distinct corporate entity, including numerous hospitals and hospital facilities located within the City of Pittsburgh.   In addition, UPMC has other wholly owned corporations and organizations that are taxable entities.   As a

1

result, annual taxes and other contributions paid by these taxable UPMC organizations are approximately $84 million.  The annual payment by all UPMC organizations for the employer component of federal and state employment taxes is roughly $197 million.

3.      Over the years, UPMC and the organizations it supports have recognized and fulfilled their respective responsibilities of good corporate citizenship and charitable purpose.  In the most recent fiscal year alone, UPMC's organizations contributed over $622 million to the community including $288 million in research and education, $238 million in uncompensated health care and $96 million in community service programs.

4.      UPMC has also honored the $100 million commitment it made in 2007 to the Pittsburgh Promise, a program developed by the City of Pittsburgh and the Pittsburgh Public Schools to give graduates of Pittsburgh's public high schools the means to pursue postsecondary education regardless of family income.

5.      Defendant, the City, is a Second Class City and Home Rule Municipality, organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, with a principal place of business at 414 Grant Street, Pittsburgh, PA 15219.

6.      Defendant, the Mayor, is an individual, acting in his official capacity as Mayor of the City of Pittsburgh, with an address at 414 Grant Street, Pittsburgh, PA 15219.

### Jurisdiction and Venue

7.      Jurisdiction lies with this Court pursuant to 28 U.S.C.A. §1331 because this matter arises under the Constitution and laws of the United States.

8.      Venue is proper because the Defendants reside and do business in this judicial district, and a substantial part of the events giving rise to the claims asserted herein arose in this judicial district.

2503946

**Nature of Action**

9.      This is a Civil Rights Action brought on behalf of UPMC, and all of the nonprofit charitable organizations that UPMC supports, seeking redress from the Defendants for denial of constitutional rights.  As detailed more fully below, the Defendants have initiated a campaign to target and damage UPMC under the pretext of a state court civil action seeking a declaration that UPMC should not be exempt from the City's payroll tax, and by other means.

10.      The state court action was announced and instituted in total disregard of state and local law and in gross violation of the constitutional rights of UPMC and its supported organizations, including their right to equal protection under the law, and procedural and substantive due process, as well as in contravention of Congress's power to regulate interstate commerce.

**The City's Taxing Authority and the Tax Procedure Owed to Its Citizens**

11.      As detailed below, the Defendants have been obligated under state and local law at all relevant times to comply with administrative procedures regarding allegedly "due and unpaid" taxes before initiating litigation.

12.      By way of background, local governments of the Commonwealth of Pennsylvania only have the powers to tax that have been granted to them by the General Assembly.  The General Assembly conferred certain such authority in the Local Tax Enabling Act, 53 P.S. §6924.101 et seq. ("LTEA").

13.      Under the LTEA, which specifically authorizes the City of Pittsburgh's payroll tax, a city of the second class like Pittsburgh may only bring suit for the recovery of taxes that are due and unpaid.  53 P.S. §6924.303(g).

2503946

14.     Although the LTEA does not define the phrase "taxes due and unpaid," the Local Taxpayer Bill of Rights Act, 53 Pa. C.S. §8421, et seq. ("LTBRA") provides for administrative assessment, refund and appeal procedures relating to an "eligible tax," which is defined, in part, as "[a]ny tax authorized or permitted under the [LTEA]." 53 Pa. C.S. §8421.   The term "assessment" is defined as "[t]he determination by a local taxing authority of the amount of underpayment by a taxpayer." *Id*.

15.     The LTBRA provides that a local taxing authority "shall notify the taxpayer in writing of the basis for any underpayment that the local taxing authority has determined to exist." 53 Pa. C.S. §8427.   Moreover, political subdivisions levying an eligible tax must "establish an administrative process to receive and make determinations on petitions from taxpayers relating to the assessment, determination or refund of an eligible tax."  53 Pa. C.S. §8430.

16.     That process may involve a tax appeals board, the governing body in executive session, a hearing officer or similar process.  *Id*.  The LTBRA also contains provisions relating to petitions, disposition of appeals and further appeal rights.

17.     Accordingly, an "eligible tax" like the City's payroll tax may not be considered "due and unpaid" if the City fails to comply with the LTBRA by making a determination of what the underpayment is and allowing the taxpayer to challenge that determination administratively.

18.     Indeed, in accordance with LTEA, the City of Pittsburgh established its own "Taxpayer Bill of Rights" (the "PTBR"). The PTBR, which explicitly applies to the City's payroll tax, "grants certain legal rights to the taxpayers and imposes obligations on taxing authorities to ensure that equality and fairness guide local governments in the collection of taxes."

4

19.     In addition to establishing a procedure for assessments and appeals, the PTBR provides that the City "shall take no lawful action against a taxpayer for the tax year or years in question until" after a taxpayer has had a timely opportunity to respond to written notice from the City of an alleged underpayment.

20.     State and local law not only provides citizens with due process regarding the collection of taxes, it also protects the confidentiality of their tax information and of any investigation into a taxpayer's status.  Indeed, the LTBRA includes a confidentiality provision that makes it a crime to divulge confidential tax information gained as the result of an investigation or report.  *See* 53 Pa. C.S. §8437.

21.     As alleged more fully below, the Defendants have deliberately disregarded all of these obligations and/or limitations, choosing instead to gin up a new set of tax rules just for UPMC.

### Background

22.     On March 20, 2013, the Defendants sued UPMC in a state court action captioned *City of Pittsburgh, a Pennsylvania Second Class City, and Home Rule Municipality, by its Treasurer, v. UPMC, a Pennsylvania Nonprofit, Non-Stock Corporation* (No.:  GD 13-005115) in a purported attempt to challenge UPMC's entitlement to an exemption under the City's payroll tax (the "Payroll Tax Lawsuit").   By filing the lawsuit, the Defendants deliberately bypassed all of the procedural steps required under the LTEA, LTBRA and PTBR and summarily deprived

2503946

UPMC and any of its supported organizations of substantive or procedural due process.[1]   In addition, and in furtherance of their unlawful purpose, the Defendants flouted the LTBRA's criminal prohibition on nondisclosure by broadcasting the "results" of the "privileged and confidential" investigation conducted on their behalf.

23.    The Defendants' actions surrounding their deliberate decision to run roughshod over the process due and owing to UPMC, which are chronicled in the ensuing paragraphs, evidence the Defendants' highly improper and unlawful motives.   Among other things, the Defendants: (a) failed to determine in good faith whether UPMC, a parent organization -- rather than the various UPMC organizations that employ over 40,000 individuals who work in the city -- even owes any payroll taxes; (b) acknowledged unabashedly that they are targeting UPMC; (c) admitted that a primary reason they are targeting UPMC is because of its ties to international operations; (d) prepared, published and posted online a "Privileged and Confidential" investigatory opinion letter heavy on unsubstantiated allegations and even "rumor" in violation of the LTBRA's criminal prohibition on disclosure; and (e) rejected a good faith request from UPMC that the City simply provide it with process due and owing in lieu of continuing to pursue the Payroll Tax Lawsuit.

24.    By way of background and chronology, on December 13, 2012, the Mayor wrote to Jeffrey Romoff, President and CEO, UPMC, and formally invited him to serve on the Intergovernmental Cooperating Authority (the "ICA") Nonprofit Sector Support Task Force (the "Task Force").

---

[1] The uniform process implemented in early 2013 by the Allegheny County Solicitor and County Office of Property Assessment ("OPA") evaluating tax exemptions presents a stark contrast to the Defendants' target-UPMC approach.   The OPA issued letters to *all* nonprofit organizations asking them to demonstrate why the real estate parcels they own should continue to be exempt from taxes.   Sixteen different UPMC organizations received 197 letters for the various parcels they own, and are participating in good faith in that County process.

25.     The Mayor explained in his letter that the ICA had approved the City of Pittsburgh's 2013 budget on the condition that a high level task force be established to "review, study, benchmark, develop and submit a written proposal to the City and ICA regarding the level, length and form of support from the nonprofit sector to the City of Pittsburgh."  He further advised that the Task Force would be constituted by the end of 2012 and would submit a report to the ICA by June 30, 2013.  Mr. Romoff accepted the invitation on behalf of UPMC.

26.     During the first two months of 2013, the Defendants offered no reason for UPMC to believe that the City would abandon its effort to engage nonprofits uniformly or otherwise choose to single-out UPMC.

27.     Indeed, when the Mayor announced during a March 1, 2013 press conference that he did not plan to seek reelection, he acknowledged, albeit indirectly, UPMC's charitable contributions to the City, citing the Pittsburgh Promise, to which UPMC committed $100 million, as one of his greatest accomplishments as Mayor.

28.     The Mayor's reference to the Pittsburgh Promise at that time and his ostensible commitment to the ICA Task Force completely obscured, however, an extant campaign spawned by the Defendants in January 2013 to unlawfully target, tarnish and undermine UPMC.

29.     Specifically, on March 5, 2013, just four days after the Mayor announced he would not run for re-election, counsel engaged by the City submitted a 13-page "Privileged and Confidential" letter to the City Solicitor, summarizing an investigation purportedly launched in January and providing a legal opinion regarding the tax exempt status of UPMC and its supported organizations.

30.     While the Privileged and Confidential Letter purports to draw conclusions about UPMC's eligibility for the payroll tax exemption, it includes no analysis as to whether UPMC

7

2em

even has employees.   Moreover, many of the letter's conclusions are predicated on outright falsehoods, unfounded allegations, and counsel's unspecified "understand[ing]" of certain "facts" and even "rumor."   These include the following erroneous conclusions: "many of [UPMC's] private facilities do not offer any charitable services," UPMC engages in "patient dumping," and UPMC "has a policy of aggressively pursuing patient debts."

31.   Less than two weeks after receiving the Privileged and Confidential Letter, on March 20, 2013, the Mayor held another press conference, this time to announce the City's filing of the Payroll Tax Lawsuit.   During that press conference and in subsequent media interviews, the Defendants' manifested their deliberate intent to damage UPMC's reputation and to subvert all pending and future assessment proceedings regarding UPMC and its supported organizations.[2]

32.   Among other things, even though the Defendants knew that many of the conclusions in the Privileged and Confidential Letter were unfounded and erroneous, they intentionally distributed and posted the letter for the unlawful purpose of defaming and demeaning UPMC and its organizations, and otherwise suggesting that UPMC supported charitable organizations are not entitled to tax exemption.

33.   The mere publication of the letter constitutes a deliberate breach of confidentiality owed by all taxing authorities under the LTBRA, which is part of the very statute upon which the

---

[2] As the Defendants are fully aware, there are matters pending or that will be pending before the Allegheny County Office of Assessments or Board of Assessment Appeals regarding real estate tax assessment for hundreds of properties owned by UPMC supported organizations. The Privileged and Confidential Letter and the Defendants' conduct make abundantly clear Defendants' intention to prejudice UPMC in those ancillary proceedings.

8

City purports to base its Payroll Tax Lawsuit.[3]   Specifically, the publication of the letter constitutes a criminal violation of the confidentiality provisions of the LTBRA.  Indeed, the very "Privileged and Confidential" designation affixed to the top of the letter's first page obligated the Defendants to treat the entirety of the letter including all "facts" set forth in the letter, as confidential information.

34.    At the same press conference during which the Defendants published the Privileged and Confidential letter, the Mayor declared that other large nonprofits were evaluated, including "Highmark, West Penn Allegheny Health System and Pittsburgh's universities." There is no indication in the Privileged and Confidential Letter, however, that any such evaluation was in fact done.  To the contrary, the Defendants have admitted that UPMC is the only nonprofit organization it will target for purposes of payroll taxes.[4]   Indeed, the Mayor admitted during a media interview also on March 20 that that the Defendants are "focused on UPMC" and that UPMC would only "be treated like everybody else when they start acting like everybody else."

35.    The Mayor also confirmed on March 20 what the Privileged and Confidential Letter and the Payroll Tax Lawsuit make abundantly clear - that UPMC has been singled out for having an affiliation with international operations:

> This isn't about the charities that are operating on the neighborhood level or the churches or the folks that do neighborhood, community work. . . . I  have the list of countries

---

[3] The deliberate publication of the Privileged and Confidential Letter to members of the news media and subsequent publication on the City's official website (where it remains posted) cannot be considered to be anything other than an intentional unlawful act by the Defendants, designed to harm UPMC and its supported organizations.

[4] The facts regarding the Defendants' singular targeting of UPMC, as well as the Defendants' failure to identify the separate UPMC supported entities in the City's payroll tax lawsuit, are not set forth for the purpose of challenging, in this lawsuit, the manner of the City's assessment or collection of taxes.  Rather, these facts are important as further demonstration of the outrageous behavior of the Defendants in their concerted effort to harm UPMC and its supported organizations, and to deny them their basic rights.

9

> that UPMC now has expanded to.  Let me read it off to you, and
> you tell me if this is a charity that the taxpayers of Allegheny
> County and Pittsburgh should be supporting. … Places like
> Ireland, Italy, Great Britain, Qatar, Kazakhstan, Singapore, China,
> Japan and Cyprus.  UPMC is in all those places; no other local
> nonprofits are in all those places.

36.     The Defendants' focus on UPMC's affiliation with international operations is further evidence of their attempt to damage UPMC and its supported organizations by asserting that these organizations are not operating in the best interests of the local region and its patients.

37.     As announced at that press conference on March 20, 2013, the City did indeed file the Payroll Tax Lawsuit.  The lawsuit was filed and announced publicly in a manner intended and designed to malign the reputation of UPMC, its supported organizations, and its executive management, and to subvert all pending and future tax assessment processes involving UPMC and its supported organizations.

38.     The targeting of UPMC is further exacerbated by the Defendants' misrepresentation, both in the lawsuit and other public statements, that all of UPMC supported organizations constitute a single entity.  To the contrary, and as the Defendants well know, UPMC is the parent company that supports the numerous entities that employ thousands of individuals who work in the City.

39.     Instead of following the law by conducting assessments of these employer organizations, the Defendants willfully forged ahead with a convenient press conference and specious lawsuit targeting UPMC.

40.     At no time before or after filing the lawsuit did the Defendants provide any UPMC organization the process due and owing under the state and local law.

41.     On April 12, 2013, counsel for UPMC made a good-faith attempt to mitigate the damage done by the Defendants' actions and avoid further unnecessary litigation by delivering a

2503946

letter to counsel for the City, asking that the City agree to withdraw its state court action, proceed with procedurally appropriate process regarding the issue of tax exemptions, and agree to once again work together with UPMC in developing real solutions to the financial issues facing the City.

42.     In the letter, counsel for UPMC cited concerns that the state court action had been instituted without regard to the appropriate administrative due process, had singled out UPMC, and had inappropriately focused on UPMC's international operations.

43.     At the time of the filing of this action, the City of Pittsburgh has not responded to the good-faith request made by UPMC on April 12, 2013.

## COUNT I

### VIOLATION OF DUE PROCESS
#### FOURTEENTH AMENDMENT, U.S. CONSTITUTION
#### 42 U.S.C. §1983

44.     The foregoing paragraphs of this Complaint are incorporated by reference.

45.     Section 1983 of the Civil Rights Act of 1964, as amended, provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws shall be liable to the party injured in an action of law, suit in equity or other proceedings for redress."

46.     In accordance with 42 U.S.C. §1983, any person who under color of state law subjects or causes to be subjected any citizen of the United States, any rights, privileges or immunities secured by the Constitution and laws, shall be liable in an action at law, suit and equity or other proper proceeding for redress.

2503946

47.     Section 1983 was enacted pursuant to Section V of the Fourteenth Amendment of the United States Constitution for the protection of certain rights "secured by the Constitution and laws" against infringement by the states.  A corporation is a person within the meaning of the equal protection and due process of law clauses of the Fourteenth Amendment.  Accordingly, a corporation, even if not a citizen, is still an "other person" for §1983 purposes.

48.     The City of Pittsburgh is a state actor for purposes of §1983.

49.     The actions of the City of Pittsburgh, as set forth herein, constitute actions of policy making or execution for purposes of §1983.

50.     Mayor Luke Ravenstahl, as the Chief Executive of the Defendant City of Pittsburgh, is a policy making state actor for the purposes of §1983.

51.     Procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

52.     The due process clause of the Fourteenth Amendment also contains a substantive component that bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

53.     To establish a substantive due process claim under 42 U.S.C. §1983, plaintiff must prove:  (1)  The particular interest at issue is protected by the Fourteenth Amendment, and (2) The government's deprivation of that protected interest – shocks the conscience.  *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001).

54.     Three standards may support a finding that the government action shocks the conscience:  (1) deliberate indifference; (2) gross negligence or arbitrariness; or (3) intent to cause harm.  *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).  Where the state actor had ample time for deliberation before engaging in the alleged constitutional conduct, the

appropriate standard will be deliberate indifference.  *Patrick v. Great Valley Sch. Dist.*, 296 Fed. App'x 258, 261-62 (3d Cir. 2008).

55.     As set forth in detail above, Defendants acted deliberately to deny UPMC its right to due process by ignoring, abandoning and by-passing the procedures and rights set forth in the LTBRA, including acts constituting criminal violation of the LTBRA.

56.     The result was the complete denial of UPMC's rights to procedural due process.

57.     However, as described above, the Defendants' actions went far beyond the denial of procedural due process to UPMC.

58.     Here, the Defendants' actions were undertaken in gross arbitrariness or with intent to cause harm, and thus shock the conscience.

59.     Moreover, the Defendants' intentional actions, including the Privileged and Confidential Letter's publication of untrue, salacious and confidential information were undertaken for an improper purpose, namely, to harass and punish UPMC and its supported organizations, subvert other pending tax emption proceedings and matters, and to damage the relationship of UPMC and its supported organizations with the community and their respective patients.

60.     The Defendants have caused UPMC to suffer past and on-going deprivations of its constitutional rights.

WHEREFORE, Plaintiff UPMC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in an appropriate amount, and that UPMC be awarded attorneys fees, and such other relief as this Honorable Court deems just and appropriate.

2503946

## COUNT II

### EQUAL PROTECTION
#### FOURTEENTH AMENDMENT, U.S. CONSTITUTION
#### 42 U.S.C. §1983

61.     The foregoing paragraphs of this Complaint are incorporated by reference.

62.     The equal protection clause of the Fourteenth Amendment protects a person or a corporation against intentional discrimination in the enforcement of a law, whether occasioned by express terms of a statute or by improper execution by government officials.   *Kaplan v. Chertoff*, 481 F.Supp.2d 370, 392 (E.D. Pa. 2007).

63.     The equal protection clause keeps governmental decision makers from treating differently persons who are in all relevant respects alike.   *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89; 211 U.S. App'x LEXIS 398 (3d Cir. 2010).

64.     To establish a claim for violation of the equal protection clause based on a class-of-one, a plaintiff must demonstrate that:  (1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment.   *Id. See also*, *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

65.     Here, the Mayor and City have affirmatively stated that they are targeting and have selectively filed an action *only* against UPMC, and that they have no plans to pursue similar relief against any similarly situated nonprofit charitable entities.

66.     These types of statements – and the actions premised upon them – constitute classic examples of activity in violation of the equal protection clause.

67.     Moreover, the actions undertaken by the Defendants, including the publication in the Privileged and Confidential Letter, were taken for an improper purpose, namely, to single out

UPMC and its supported entities so that it will be treated unequally with similarly situated entities under the law.

68.     The Defendants have caused UPMC to suffer past and on-going deprivations of its constitutional rights.

WHEREFORE, Plaintiff UPMC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in an appropriate amount, and that UPMC be awarded attorneys fees, and such other relief as this Honorable Court deems just and appropriate.

## COUNT III

### DENIAL OF RIGHTS, PRIVILEGES AND IMMUNITIES THROUGH VIOLATION OF COMMERCE CLAUSE OF THE U.S. CONSTITUTION
### FOURTEENTH AMENDMENT, U.S. CONSTITUTION
### 42 U.S.C. §1983

69.     The foregoing paragraphs of this Complaint are incorporated by reference.

70.     The "Commerce Clause confers 'rights, privileges, or immunities' within the meaning of §1983." *Dennis v. Higgins*, 498 U.S. 439, 446 (1991).

71.     Although the Commerce Clause is a power-allocating provision, giving Congress preemptive authority over regulation of interstate commerce, the Commerce Clause is also a substantive restriction on permissible state regulation of interstate commerce. *Id.*

72.     Individuals injured by state action that violates an aspect of the commerce clause restricting state regulation of interstate commerce may bring an action under 42 U.S.C. §1983. *Id.*

73.     The dormant Commerce Clause prohibits protectionism, "whether targeted at for-profit entities or serving, as here, to encourage nonprofits to keep their efforts close to home . . . ." *See Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 526 U.S. 564, 588 (1997).

74.     By singling out UPMC for a lawsuit, and purporting to base it in significant part on UPMC's engagement in international commerce and operations, the Defendants are infringing upon UPMC's rights to engage in interstate and international commerce, in violation of the dormant Commerce Clause.

75.     As set forth above, Defendants' actions are deliberate and carried out with the intention of depriving UPMC and its supported organizations of its rights under the U.S. Constitution.

76.     The Defendants have caused UPMC to suffer past and on-going deprivations of its constitutional rights.

WHEREFORE, Plaintiff UPMC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants in an appropriate amount, and that UPMC be awarded attorneys fees, and such other relief as this Honorable Court deems just and appropriate.

JURY TRIAL DEMANDED.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP


By:   */s/ William Pietragallo, II*
      William Pietragallo, II, Esquire
      Pa. I.D. No. 16413
      James W. Kraus, Esquire
      PA. I.D. No. 56881
      Peter S. Wolff, Esquire
      Pa. I.D. No. 208433
      John R. Brumberg, Esquire
      Pa. I.D. No. 311352
      One Oxford Centre, 38th Floor
      Pittsburgh, PA  15219
      (412) 263-2000

      *Counsel for Plaintiff*

16

2503946