# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **UPMC** *a Pennsylvania Nonprofit,* *Non-Stock Corporation*, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | |
| **CITY OF PITTSBURGH** *a Pennsylvania Second Class City and Home Rule Municipality;* **LUKE RAVENSTAHL**, *in his, Official Capacity as Mayor, City of Pittsburgh, and Individually;* **FAIR SHARE PITTSBURGH ACTION FUND**; **JOHN DOE #1** *and* **JOHN DOE #2,** | ) ) ) ) ) ) ) ) ) ) | Civil Action No. 13-563 |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

**CONTI, Chief District Judge.**

Pending before the court are several related motions. First, are motions to dismiss the amended complaint filed by the City of Pittsburgh ("City") and its mayor, Luke Ravenstahl ("mayor") (collectively, the "City Defendants") (ECF No. 22) and Fair Share Pittsburgh Action Fund ("Fair Share") (ECF No. 37). The City Defendants filed a brief in support of their motion to dismiss (ECF No. 21), as well as a reply brief (ECF No. 51.) Fair Share also filed a brief in support (ECF No. 38) and a reply brief concerning its motion to dismiss. (ECF No. 52). UPMC filed an omnibus response in opposition to both motions to dismiss (ECF No. 43). Second, is the City Defendants' and Fair Share's (collectively, the "Defendants") joint motion to stay pending

adjudication of the motions to dismiss (ECF No. 50). UPMC filed a brief in opposition to the motion to stay (ECF No. 53) and the Defendants filed a joint reply brief (ECF No. 56-1[1]). Finally, Fair Share filed a motion for sanctions in which it contends that UPMC violated Rule 11 by filing the amended complaint (ECF No. 40), and UPMC filed a response to that motion (ECF No. 46).

The court heard oral argument on the present motions on October 21, 2013, and held that the motion for sanctions would be denied. The other matters are now ripe for disposition. For the reasons set forth below, this court will exercise jurisdiction over UPMC's claims, but will stay adjudication of the claims pending resolution of the litigation currently pending in the Court of Common Pleas of Allegheny County, Pennsylvania. The joint motion to stay is moot in light of this ruling. As noted, the court orally denied Fair Share's motion for sanctions for the reasons set forth on the record at the October 21, 2013 hearing.

## I.    <u>Factual Background</u>

UPMC seeks a federal forum to resolve an ongoing, manifestly contentious, tax dispute between it and the City. On April 19, 2013, UPMC took two actions in furtherance of its quest for a federal forum: first, it filed the instant lawsuit in this court; and second, it filed a notice of removal asking this court to assert jurisdiction over a lawsuit the City filed in March 2013 in the Court of Common Pleas of Allegheny County, Pennsylvania, challenging UPMC's status as an Institution of Purely Public Charity ("IPPC") (the "State Court Action"). (No. 13-

---

[1] The court hereby grants Defendants' joint motion for leave to file a reply brief (ECF No. 56) and deems the brief attached thereto to have been timely and properly filed.

565, ECF No. 1.)  The City's amended complaint in the State Court Action seeks a declaratory judgment that UPMC is not exempt from the City's payroll tax pursuant to Pennsylvania law and an order directing UPMC to file quarterly payroll tax returns covering all its operations from March 31, 2007, to the present. (13-565, ECF No. 17 ¶ 18.)

On August 6, 2013, this court remanded the State Court Action to the Court of Common Pleas.  In doing so, the court explicitly stated that "UPMC's invocation of the dormant Commerce Clause and the Fourteenth Amendment are defenses to the City's claims that UPMC is no longer an IPPC" and could not support removal of the action to federal court. (13-565, ECF No. 32 at 11, 14.)  The State Court Action was assigned to the Commerce and Complex Litigation Center of the Court of Common Pleas of Allegheny County, Pennsylvania.  City of Pittsburgh v. UPMC, No. GD-13-005115 (Ct. Com. Pl., Alleg. Cnty.).  In preliminary objections filed on September 9, 2013, UPMC claims, among other things, that the State Court Action violates the dormant Commerce Clause and that the City failed to adhere to due process procedures set forth by state law. (Id., Doc. No. 10.)  The City asked the state trial court to exercise jurisdiction over three appeals, pending before the Board of Property Assessment Appeals and Review, concerning UPMC's entitlement to claim IPPC status for real estate tax purposes.  Id., Doc. No. 14.  The court was informed at oral argument that the City will soon file a second amended complaint in the State Court Action.

Returning to the instant lawsuit, this court is tasked with deciding whether this dispute is properly before a federal court at this juncture.

## A.  The Amended Complaint

The amended complaint in the instant action begins with a recitation of the Supreme Court's ominous admonition, in 1819, that the "power to tax involves the power to destroy" (ECF No. 18 at 1) and goes on to accuse the City Defendants and Fair Share of conspiring to violate UPMC's constitutional rights by filing a "sham lawsuit seeking to make UPMC…pay payroll taxes" and launching a publicity campaign "concomitantly with the Mayor's sham lawsuit" to sabotage UPMC's tax-exempt status. (Id. at 2.)

The amended complaint is comprised of four counts, each of which aver violations of 42 U.S.C. § 1983, and seek monetary damages.  Counts I through III are asserted against the City and its mayor, in both his official and individual capacities.  Count IV, the conspiracy count, is asserted against all defendants and is substantively derivative of the preceding three counts.  Count I alleges violations of UPMC's Fourteenth Amendment substantive and procedural due process rights. (Id. ¶¶ 194-215.)  Count II alleges violations of UPMC's Fourteenth Amendment equal protection rights. (Id. ¶¶ 216-24.)   Count III alleges violations of UPMC's Fourteenth Amendment rights, privileges and immunities through violation of the Commerce Clause. (Id. ¶¶ 225-34.)

In support of its procedural due process claim, UPMC accuses the City Defendants of "by-passing the procedures and rights set forth in the [Local Taxpayers Bill of Rights Act, 53 PA. CONS. STAT. § 8421 ("LTBRA")]" in favor of publically defaming UPMC by

filing the purported "sham lawsuit" and releasing a letter containing the City's pre-litigation

analysis of UPMC's tax-exempt status (the "Pre-Litigation Letter").[2] (Id. ¶ 205.)   In support of

its substantive due process claim, UPMC alleges that the City Defendants engaged in "conscious

shocking" conduct aimed at depriving UPMC of its property interest in being able to "conduct

operations" and its "constitutionally protected interest in being free from violation of its

statutorily protected rights under the LTBRA and [the Local Tax Enabling Act, 53 PA. STAT. §

6924.101 ("LTEA")]." (Id. ¶¶ 211, 213.)  UPMC claims that defendants violated its equal

protection rights by selectively filing a baseless lawsuit only against it and not other similarly

situated nonprofit entities. (Id. ¶¶ 220, 222.)  Similarly, UPMC contends that "defendants are

infringing on UPMC's rights to engage in interstate and foreign commerce, in violation of the

dormant Commerce Clause" by "singling out UPMC for a lawsuit…base[d]…on UPMC's

engagement in international commerce" (Id. ¶ 232.)  Finally, UPMC contends that Fair Share

conspired with the City Defendants to engage in a "public propaganda…[and] misinformation

campaign instituted specifically to dovetail with the City's lawsuit and [disclosure of] the [Pre-

Litigation Letter], for the sole purpose of damaging UPMC…." (Id. at ¶¶ 236-37.)

---

[2] The Pre-Litigation Letter (ECF No. 59-1) is a thirteen-page letter dated March 5, 2013,
addressed to Daniel Regan, City Solicitor, and signed by E.J. Strassburger on behalf of the law
firm Strassburger McKenna Gutnick & Gefsky, which is counsel of record for the City
Defendants in both this case and the State Court Action.

**B. The City Defendants' Arguments in Support of Dismissal**

The City Defendants argue that UPMC's amended complaint should be dismissed for six reasons: (1) federal courts should refrain from interfering in an on-going state court action pursuant to the <u>Younger</u> doctrine[3]; (2) the City Defendants are immune from suit because the activity UPMC complains of represents the exercise of the First Amendment right to petition the courts for redress, pursuant to the <u>Noerr-Pennington</u> doctrine[4]; (3) any civil rights action based on the City's filing of the State Court Action is barred unless and until that lawsuit is terminated in UPMC's favor; (4) the City's disclosure of the Pre-Litigation Letter does not give rise to any Constitutional claim; (5) UPMC has not alleged and cannot allege a violation of the Due Process, Equal Protection or Commerce Clauses; and (6) the mayor enjoys qualified immunity from suit. (ECF No. 21.) With respect to several of these arguments, the City Defendants advance the alternative position that, if the case is not dismissed, the court should abstain from adjudicating this matter until the State Court Action is resolved.

---

[3] The <u>Younger</u> abstention doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings" and applies when: (1) there are ongoing state proceedings that are judicial in nature, (2) the federal proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. <u>Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431-32 (1982); <u>FOCUS v. Allegheny Cnty. Ct. Com. Pl.</u>, 75 F.3d 834, 843 (3d Cir. 1996). This doctrine is discussed more fully in Section III.B.

[4] The <u>Noerr–Pennington</u> doctrine, which derives from the First Amendment's guarantee of "the right of the people ... to petition the Government for a redress of grievances" provides immunity from tort liability to those who petition any department of the government, including by filing a lawsuit in court. U.S. CONST. Amend. I; <u>United Mine Workers of Am. v. Pennington</u>, 381 U.S. 657 (1965); <u>Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961); <u>Cal. Motor Transp. Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510 (1972). This doctrine is discussed more fully in Section III.C.1.

## C. **Fair Share's Arguments in Support of Dismissal**

Fair Share contends that UPMC's amended complaint must be dismissed in its entirety pursuant to the comity doctrine announced in Fair Assessment in Real Estate Association v. McNary, 454 U.S. 100 (1981) (Fair Assessment).[5] (ECF No. 38 at 5-9.) In the alternative, Fair Share argues, as do the City Defendants, that the Noerr-Pennington doctrine requires dismissal and that UMPC failed to plead viable constitutional claims. (Id. at 9-14.) Lastly, Fair Share alleges that UMPC failed to plead adequately that Fair Share is a member of a civil conspiracy with a state actor. (Id. at 15-17.)

## D. **UPMC's Responses**

UPMC maintains that the exceptional circumstances justifying Younger abstention do not exist here and that the principles announced in Fair Assessment are not implicated. Specifically, UPMC asserts this case is not one challenging the constitutionality of a state tax or seeking a tax refund. (ECF No. 43 at 10-22.) UPMC also argues that the Noerr-Pennington doctrine does not apply because the State Court Action is a "sham litigation" and because the City's negative publicity campaign is not protected activity under the doctrine. (Id. at 22-27.) With respect to the substantive challenges made to each of its constitutional claims, UPMC contends that it meets the necessary minimal pleading requirements in order to survive a motion to dismiss. (Id. at 29-39.) Finally, UPMC argues that the mayor is not entitled to

---

[5] In Fair Assessment in Real Estate Association v. McNary, 454 U.S. 100, 101 (1981), the Supreme Court held that a federal court could not entertain a taxpayer's § 1983 lawsuit alleging that a state tax system was being unconstitutionally administered. This decision is discussed more fully in Section III.A.

qualified immunity because he violated UPMC's clearly established constitutional rights (Id. at 39-40.)

## II. <u>Standard of Review</u>

### A. <u>Principles of Comity and Abstention</u>

Although federal courts have a duty to exercise jurisdiction conferred upon them by Congress, that duty is not absolute. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Numerous abstention principles direct federal courts to refrain from hearing matters where to do so would interfere with state court proceedings or a state's "sovereign prerogative." Id. at 716-19 (summarizing various abstention doctrines). The comity doctrine serves to ensure that "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Levin v. Commerce Energy, Inc., 560 U.S. 413, 130 S. Ct. 2323, 2336 (2010). Even where dismissal of a lawsuit is not warranted under abstention doctrines or comity principles, the United States Supreme Court has specifically instructed district courts to stay adjudication of a federal lawsuit where litigating the matter would disrupt state government or create needless friction between state and federal authorities. Quackenbush, 517 U.S. at 720-21. The Court has "long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 586 (1995).

## B. **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556); see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). Although a court must accept as true the allegations contained in a complaint, it need not accept legal conclusions or mere conclusory statements. Twombly, 550 U.S. at 555; Commonwealth of Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 179 (3d Cir. 1988) (a court shall properly reject any "conclusory recitations of law" pled within the complaint); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining if a plaintiff is entitled to offer evidence in support of its claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. Id. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. Gould Elecs. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

Generally, if "matters outside the pleadings are presented to and not excluded by the court" a motion to dismiss must be treated as a motion for summary judgment. FED. R. CIV. P. 12(d). There are exceptions to this general rule. First, a court is permitted to consider documents "integral to or explicitly relied upon in the complaint" in ruling on a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." Id. Second, the court may rely on "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Third, the court may rely on public records. Id. at 1197.

**III.    Discussion**

**A.** *Fair Assessment*

      Fair Share contends that the United States Supreme Court's decision in <u>Fair Assessment in Real Estate Association v. McNary</u>, 454 U.S. 100 (1981) ("<u>Fair Assessment</u>"), prevents this court from exercising jurisdiction over this case.  The City Defendants do not assert this basis for dismissal, but express their agreement with Fair Share's position in their reply brief. (ECF No. 51 at 4 n.1.)   In <u>Fair Assessment</u> the Supreme Court held that a federal court could not entertain a taxpayer's § 1983 lawsuit alleging that a state tax system was being unconstitutionally administered.  454 U.S. at 101.   In reaching this holding, the Court emphasized that taxpayers must protect their federal constitutional rights by following state tax procedures so that the "State" is "first permit[ed]…to rectify any alleged impropriety." <u>Id.</u> at 108 n.6, 114, 116.   Succinctly summarizing its own holding in <u>Fair Assessment</u> almost fourteen years after the case was decided, the Supreme Court stated that "[<u>Fair Assessment</u>] held that because of principles of comity and federalism, Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law furnishes an adequate legal remedy." <u>Nat'l Private Truck Council</u>, 515 U.S. at 587.

      According to UPMC, <u>Fair Assessment</u> is inapplicable to this case because its holding is limited to "state tax cases" in which a taxpayer seeks a declaration that a state tax scheme is unconstitutional or in which a taxpayer seeks to either avoid paying taxes or to collect a refund. (ECF No. 43 at 16-19.)  UPMC argues that because this case "involves much more" than the City's attempt to collect taxes, <u>Fair Assessment</u> does not apply. (<u>Id.</u> at 20.)   UPMC is

incorrect regarding both the scope of the holding in <u>Fair Assessment</u> and the factual distinctions between this case and <u>Fair Assessment</u>.

UPMC contends that <u>Quackenbush v. Allstate Insurance Company</u>, 517 U.S. 706 (1996), and <u>Hibbs v. Winn</u>, 542 U.S. 88 (2004), "confirm[] the limited application" of <u>Fair Assessment</u>, and its inapplicability to this case. (ECF No. 43 at 24.)  In <u>Quackenbush</u>, the Supreme Court held that federal courts do not have the power to remand or dismiss a common law action for damages, sounding in contract and tort, pursuant to the <u>Burford</u> abstention doctrine.[6]  <u>Quackenbush</u>, 517 U.S. at 731.   In <u>Hibbs</u> the Supreme Court held that the Tax Injunction Act (the "TIA"), 28 U.S.C. § 1341, did not bar a suit filed in federal district court by a group of Arizona taxpayers challenging a state law that provided tax credits to citizens who contributed money to private schools, including religious schools, on the ground that it violated the Establishment Clause.   542 U.S. at 93, 94-95.  As this is not a case in which any party asserts that <u>Burford</u> abstention or the TIA applies, both decisions are readily distinguishable. Nevertheless, this court has reviewed the manner in which the Supreme Court discussed <u>Fair Assessment</u> in both decisions in order to evaluate fully UPMC's position.  The court concludes that neither decision compels the conclusion that the holding in <u>Fair Assessment</u> has been abrogated or otherwise does not apply here.

---

[6] <u>Burford</u> abstention applies where a state creates a complex regulatory scheme, supervised by the state courts and central to state interests, and federal jurisdiction deals primarily with state law issues and will disrupt a state's efforts "to establish a coherent policy with respect to a matter of substantial public concern." <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943); <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 814 (1976); <u>see</u> <u>United Services Automobile Ass'n v. Muir</u>, 792 F.2d 356, 364 (3d Cir. 1986) ("generally, <u>Burford</u> abstention is justified where a complex regulatory scheme is administered by a specialized state tribunal having exclusive jurisdiction").

In reaching its holding in Quackenbush, the Supreme Court characterized Fair Assessment as a decision about the "scope of the § 1983 cause of action," instead of the abstention principles that were at issue in Quackenbush.  Quackenbush, 517 U.S. at 719 (citing Nat'l Private Truck Council, 515 U.S. at 589-90).  UPMC contends that Quackenbush limited the holding in Fair Assessment to only those "state tax cases that require a declaration that a state tax scheme is unconstitutional." (ECF No. 43 at 18.)   The Supreme Court's holding in Fair Assessment is not limited in this way. Fair Assessment, 454 U.S. at 184 (noting that taxpayers "will not recover damages under § 1983 unless a district court first determines that [the government's] *administration* of the County tax system violated [the taxpayers'] constitutional rights" (emphasis added)).   Quackenbush does not limit the holding in Fair Assessment in the manner asserted by UPMC.  In Quackenbush, the Supreme Court stated that "we held in [Fair Assessment], that a federal court should not entertain a 42 U.S.C. § 1983 suit for damages based on the *enforcement* of a state tax scheme," and immediately thereafter emphasized that "the damages action in [Fair Assessment] was based on the unconstitutional *application* of a state tax law...." Quackenbush, 517 U.S. at 719 (emphasis added).  UPMC's contention that Quackenbush limited the holding in Fair Assessment to only those "state tax cases that require a declaration that a state tax scheme is unconstitutional" is erroneous.  These passages instead confirm that Fair Assessment applies where taxpayers raise constitutional challenges to how a state tax scheme is being enforced against and applied to them.

The Court's citation in Quackenbush to National Private Truck Council is significant in proving this point. In that decision, the Oklahoma Supreme Court found that an Oklahoma tax on out-of-state vehicles violated the dormant Commerce Clause and awarded refunds to the taxpayer-litigants, but refused to grant injunctive relief under § 1983. Nat'l Private Truck Council, 515 U.S. at 584-85. The Supreme Court held that state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate state remedy, i.e., the refunds. Id. at 592. Although that holding is not directly applicable to the question before this court because UPMC does not seek an injunction, what is relevant is that in reaching its decision, the Supreme Court repeatedly emphasized Congress' and the high Court's longstanding aversion to federal interference with state tax administration, enforcement and collection. Id. at 586-89 ("[w]e have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration"; "[s]ince the passage of § 1983, Congress and this Court repeatedly have shown an aversion to federal interference with state tax administration"; "federal law generally will not interfere with administration of state taxes"; "denial of relief under § 1983 was consistent with the long line of precedent underscoring the federal reluctance to interfere with state taxation"). This language emphasizes that comity principles have special consequence in the realm of state taxation.

Likewise, the Supreme Court's discussion of Fair Assessment in Hibbs does not, as UPMC contends, indicate that the rule announced in Fair Assessment has been abrogated. In Hibbs, a case challenging a tax credit for contributions to religious schools on Establishment Clause grounds, the Supreme Court cited Fair Assessment twice as an example of the kinds of cases in which it previously found that the TIA and "principles of comity" barred suit because a federal litigant was seeking to avoid paying state taxes, to obtain a refund of state taxes or to "arrest or countermand state tax collection." Hibbs, 542 U.S. at 106, 107 n.9. The Court found, in Hibbs, that because the taxpayers were not contesting their own tax liability, their lawsuit did not fall into these categories and was not barred by principles of comity. Id. at 93.

The Supreme Court more recently emphasized this critical distinction between cases in which a party's own tax liability is not a factor and those in which it is. Levin v. Commerce Energy, Inc., 130 S.Ct. 2323 (2010). In Levin the Court distinguished Hibbs on this basis in affirming dismissal, on comity grounds, of a lawsuit in which certain taxpayer companies attacked the constitutionality of state tax exemptions that were available to other taxpayer companies on the purported ground that they violated the Equal Protection and dormant Commerce Clauses. Levin, 130 S.Ct. at 2335. In doing so, the Supreme Court stated that lower federal courts should "refrain from taking up cases of this genre, so long as state courts are equipped fairly to adjudicate them," noting specifically that "any substantial federal question, of course, 'could be reviewed when the case [comes to this Court] through the hierarchy of state courts.'" Id. at 2334 & n.8.

UPMC's lawsuit challenging the manner in which the City has sought to collect taxes from it is more akin to <u>Levin</u> than to <u>Hibbs</u>. <u>Levin</u> confirmed that where a taxpayer is objecting to how a tax law affects its own tax liability, the notions of comity announced in <u>Fair Assessment</u> bar suit in federal court. <u>Quackenbush</u> confirmed that the holding in <u>Fair Assessment</u> applies where a taxpayer is raising a constitutional challenge based on how a state tax scheme is being enforced against and applied to it. Thus, contrary to UPMC's position, the fact that UPMC is not seeking to invalidate an entire tax scheme or to obtain a refund or an injunction against collection of a tax is not dispositive under controlling Supreme Court precedent. Instead, what is dispositive is whether UPMC raises a constitutional challenge based on how its own tax liability is being affected by the way in which a taxing authority is applying and enforcing the tax laws. UPMC's instant lawsuit is such a case. UPMC will only be entitled to § 1983 damages if it proves that the City Defendants violated its constitutional rights by attempting to collect taxes from it by filing and publicizing a state court lawsuit that challenges its continued status as an IPPC. For this court to deem the City Defendants' tax collection efforts to be unconstitutional while those efforts are the subject of litigation in state court would be the epitome of federal interference in state tax matters and would pose a real risk of disrupting the City's administration of its tax scheme. For this reason the holding in <u>Fair Assessment</u> applies and directs that this court refrain from deciding the instant case.

Having concluded that the holding in Fair Assessment has not been abrogated by Quackenbush or Hibbs, the court must turn to UPMC's contention that Fair Assessment does not preclude this court's present adjudication of this case because this case is factually distinguishable from Fair Assessment. According to UPMC, the instant "lawsuit involves much more than the City's filing of a sham lawsuit seeking to recover [] payroll taxes." (ECF No. 43 at 20.) UPMC asserts that the amended complaint alleges violations of § 1983 based on "a series of coordinated acts" including an investigation of UPMC, disclosure of the Pre-Litigation Letter, by-passing the administrative process, and discussion of the State Court Action in the press. (Id.) UPMC contends that an award of damages in its favor on these § 1983 claims will not require a declaration that any tax is unconstitutional, will not result in a tax refund or a change in tax laws and will not disrupt administration of a tax system, suspend assessment of collection of any taxes or involve the State Court Action in any way. (Id.) In essence, UPMC argues that this case is factually distinguishable from Fair Assessment because this is not a case about taxes. The court has considered UPMC's written and oral arguments on this critical issue, and must disagree.

In Fair Assessment, property owners and a nonprofit corporation formed to promote the equitable enforcement of property tax laws in Missouri alleged that they had been deprived of equal protection and due process of law because newer properties were taxed at a higher rate and homeowners who had appealed their assessments were targeted for reassessment the following year. 454 U.S. at 105-06. The property owners sought refunds of the improper reassessments and the nonprofit corporation sought recovery of the expenses incurred in its efforts to obtain equitable property assessments. Id. at 106. After summarizing the claims, the Supreme Court stated "[a]s in all other § 1983 actions, the award of damages would first require

a federal-court declaration that respondents, in administering the state tax, violated petitioners' constitutional rights." <u>Id.</u> at 106-07.

The same situation exists in this case, and for that reason <u>Fair Assessment</u> is not meaningfully factually distinguishable. UPMC's essential complaint is that the City Defendants abused, and are abusing, the tax collection process by filing a lawsuit and engaging in a negative public relations campaign instead of following administrative procedures to collect allegedly past-due taxes. In fact, UPMC explicitly invokes the protections of two Pennsylvania tax administration statutes, the LTA and the LTBRA, and asserts that the City Defendants violated its constitutional rights by failing to comply with those laws. (ECF No. 18 ¶ 213.) UPMC's remaining constitutional claims allege that the City Defendants violated its rights by attacking its IPPC status in court and taking actions to publicize that lawsuit. In order for UPMC to prevail on these constitutional claims, this court would first have to find that the City Defendants violated UPMC's constitutional rights, and state law, by filing the State Court Action, and by taking various actions in connection with preparing, promoting and publicizing the same. Therefore, in essence, UPMC is challenging the City Defendants' administration of state tax laws and the holding in <u>Fair Assessment</u> is factually indistinguishable.

At oral argument, UPMC maintained that defendants' disclosure of the Pre-Litigation Letter and participation in a negative publicity campaign are independent claims that should be immediately adjudicated because to do so would require no rulings from this court that could possibly affect the State Court Action or the City's tax collection efforts. The court is not persuaded. UPMC contends that release of the Pre-Litigation Letter violates the confidentiality provisions of the LTBRA, as well as related procedural requirements. (ECF No. 18 ¶¶ 115-24.)

The City Defendants argue that the Pre-Litigation Letter does not fall within the parameters of the LTBRA. (ECF No. 21 at 8-9.)  These precise arguments establish that the Pre-Litigation Letter is integral to the tax collection process, and refute UPMC's position that its claims based on disclosure of the Pre-Litigation Letter are separable from the City's tax collection efforts. This court cannot rule on the propriety of the City Defendants' creation and disclosure of the Pre-Litigation Letter without opining on the propriety of the City's tax collection methods.  That matter is currently within the jurisdiction of the state trial court.

The court similarly concludes that claims based upon defendants' participation in a negative publicity campaign are not separable from the State Court Action, and the City's tax collection efforts.  UPMC's amended complaint characterizes this publicity campaign as "concomitant[] with the Mayor's sham lawsuit" and "instituted specifically to dovetail with the City's lawsuit."  (ECF No. 18 at 2 and ¶ 237.)  UPMC's own statements refute its position that the publicity campaign is separable from the State Court Action.  This court cannot make a determination with respect to what aspects of that publicity campaign might be separable from the State Court Action and the City's tax collection efforts, if any, and whether that publicity campaign is legally actionable while the State Court Action is ongoing.

Contrary to UMPC's contentions, no aspect of the instant lawsuit is presently separable from the State Court Action.  UPMC's status as an IPPC is the lynchpin of its tax-exempt status in Pennsylvania.  The State Court Action is, in effect, the City's first step in obtaining substantial amounts of allegedly unpaid taxes from UPMC.  The State Court Action, which seeks a ruling that UPMC is not an IPPC, and the publicity surrounding that lawsuit and the issues raised therein, are directly and inextricably intertwined with the City's attempts to

obtain tax payments from UPMC.  UPMC was unable to establish that any of the legal claims it

asserts in its amended complaint are independent or severable from the State Court Action.  Fair

Assessment, therefore, applies and teaches that the federal court must defer to the state court to

rectify, at least initially, any alleged improprieties in the tax collection process. Fair Assessment,

454 U.S. at 114; see Tomaiolo v. Mallinoff, 281 F.2d 1, 7 (1st Cir. 2002) (stating that a claim

alleging that a misinterpretation of state law led to a violation of federal rights is barred by Fair

Assessment); Trading Co. of N. Am. v. Bristol Twp. Auth., 47 F.Supp.2d 563, 571 (E.D. Pa.

1999) (stating that a challenge to the procedures or method by which a tax is collected is barred

by Fair Assessment).

   Although not a precedential decision, the court considers Reagle v. Elliott, 80 F.

App'x 737 (3d Cir. 2003), particularly instructive in deciding whether Fair Assessment bars

consideration of the instant case.  In Reagle, officials approached employees of Reagle's

plumbing company while they were on the job and "used threatening and abusive language in

demanding immediate payment" of taxes.  80 F. App'x at 737.  Reagle paid the taxes and then

sued in federal court alleging violation of his constitutional rights. Id.  In affirming the district

court's dismissal of those claims, the court of appeals cited to Fair Assessment in finding that

state law provided "judicial process and adequate remedies" to appeal the tax and that the

taxpayer's challenges to the procedures used to collect the tax were "particularly the province of

state, rather than federal, courts." Id. at 738.  Addressing, specifically, "the alleged overbearing

conduct on the part of the state employees" in collecting the tax, the court stated that "[f]ederal

courts, however, are not the proper forum for resolving such matters in circumstances." Id.  Here,

instead of a plumber complaining about verbal abuse at a job site, presumably in front of

customers or professional colleagues, in order to coerce the payment of taxes, a large nonprofit corporation complains about government officials' abuse of the court system and the media in an effort to coerce UPMC to pay taxes.  UPMC's recourse, as in <u>Reagle</u>, is in the state courts first.

That having been said, the court will not dismiss this case at this juncture.  Out of an abundance of caution the court will abstain from adjudicating this matter until the State Court Action, and any related proceedings, are concluded.  At that time, the court will be able to determine whether any allegations made in the amended complaint are legally or factually separable from the tax collection dispute litigated in state court.  This court can then also assess UPMC's ability to have litigated any such claims in state court, consider the sufficiency of the allegations of the complaint, and assess whether, and to what extent, doctrines such as <u>Noerr-Pennington</u> and qualified immunity apply.  By deferring the matter in this way, this court makes no present comment about the ultimate viability of any claims asserted in the amended complaint.

By proceeding in this manner, the court relies on the City Defendant's representations that procedures for the preservation of evidence by the outgoing Ravenstahl mayoral administration are already in place. (ECF No. 56-1 at 5).  Additionally the court has attached to this opinion a draft Preservation Order.  The parties shall meet and confer within seven days of the issuance of this opinion to discuss any additions or edits to the proposed Order that are necessary, especially as to Section II, and thereafter promptly submit a final version of said Preservation Order for this court's signature.

Although this determination results in the effective halting of this case, it does not entirely dismiss it.  The court will consider the alternative arguments in favor of dismissal to determine whether any one of them results in outright dismissal of the amended complaint.


**B.   *Younger* and its Progeny**

The City Defendants' primary argument is that this case should be dismissed in accordance with the principles announced in <u>Younger v. Harris</u>, 401 U.S. 37 (1971). (ECF No. 21 at 3-5.)  The <u>Younger</u> abstention doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings." <u>Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982).   The doctrine applies when the following three requirements are met: (1) there are ongoing state proceedings that are judicial in nature, (2) the federal proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. <u>Middlesex</u>, 457 U.S. at 432; <u>FOCUS v. Allegheny Cnty. Court of Common Pleas</u>, 75 F.3d 834, 843 (3d Cir. 1996).  The City Defendants assert that each requirement is met here, and argue that this case should be dismissed in its entirety as a result.

In opposition, UPMC contends that the Court of Appeals for the Third Circuit's decision in <u>Gwynedd Properties, Inc. v. Lower Gwynedd Township</u>, 970 F.2d 1195 (3d Cir. 1992), is controlling and dictates that the <u>Younger</u> doctrine does not apply in this case. (ECF No. 43 at 11-13.).  Alternatively, UPMC argues that the doctrine does not apply because this case falls into an exception to the <u>Younger</u> doctrine for state proceedings that are being undertaken in

bad faith or for purposes of harassment. (ECF No. 43 at 14); see Lazaridis v. Wehmer, 591 F.3d 666, 670 n.4 (3d Cir. 2010).

UPMC is correct that the Court of Appeals for the Third Circuit recognizes a distinction in Younger jurisprudence between federal cases that challenge the legality of a state law and those that challenge a course of conduct undertaken by officials to apply or enforce a state law. Addiction Specialists, Inc. v. The Twp. of Hampton, 411 F.3d 399 (3d Cir. 2005); Gwynedd, 970 F.2d at 1202-03; Heritage Farms, Inc. v. Solebury Twp., 671 F.2d 743 (3d Cir. 1982). Where a plaintiff is seeking damages based on a state official's alleged unconstitutional conduct, the second prong of the Younger test cannot be satisfied. Addiction Specialists, 411 F.3d at 410; Gwynedd, 970 F.2d at 1201-03; Heritage Farms, 671 F.2d at 748. UPMC's § 1983 claims challenging the constitutionality of the City Defendants' conduct fall into this category of cases to which Younger does not apply.

Yet, even if a court cannot abstain from exercising jurisdiction over unconstitutional conduct claims under Younger, it does not follow that a federal district court should immediately adjudicate them. In Gwynedd, the very case relied upon by UPMC, the court of appeals emphasized the risk that such damages claims could be "used to review" the state officials' decisions. Gwynedd, 970 F.2d at 1204. More recently, in Addiction Specialists, the court of appeals explicitly stated that "[o]n remand, the district court may, within its discretion, stay its adjudication of…[the] federal [damages] claims pending the outcome of the state" case so as to "avoid federal-state friction." Addiction Specialists, 411 F.3d at 414, 415. In Addiction Specialists, upon remand, the district court did just that, and stayed plaintiff's damages claims under § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12133, and the

23

Rehabilitation Act, 29 U.S.C. § 794a(a)(2), pending resolution of the related state court proceedings. <u>Addiction Specialists, Inc. v. The Twp. of Hampton</u>, No. 04-696, ECF No. 32 (W.D. Pa.).

Such a course of action is appropriate here. The viability of UPMC's damages claims depends upon whether the City acted lawfully in filing a lawsuit challenging UPMC's IPPC status so that it could collect taxes. That very lawsuit is currently pending in state court. A ruling from this court on UPMC's damages claims runs the risk of either contradicting the state court's decisions, or worse, suggesting to the state court what its future decisions should be. This unavoidable federal-state tension counsels that the court stay these proceedings pending resolution of the dispute currently pending in state court. As set forth above, because it is impossible for this court to sever any claims that might possibly stand apart from the matters being adjudicated in the State Court Action, the prudent course of action is to allow the State Court Action to run its course and reevaluate the continued viability of UPMC's claims for § 1983 damages at its conclusion.

Even if the holding in <u>Fair Assessment</u> did not apply, this court would stay UPMC's § 1983 claims pending the outcome of the State Court Action, and any related proceedings, pursuant to the <u>Younger</u> doctrine.

## C. **Remaining Arguments in Support of Dismissal**

Having concluded that it is proper to stay this matter pending resolution of the State Court Action and all related proceedings under Fair Assessment and Addiction Specialists, the court considered each of the City Defendants' and Fair Share's remaining arguments in support of dismissal to determine whether any of them support outright dismissal of the amended complaint. The court concludes that they do not, and that, in fact, each argument likewise weighs in favor of deferring adjudication of this case until after the State Court Action concludes.

### 1. **Noerr-Pennington**

Both the City Defendants and Fair Share contend that this case must be dismissed because the conduct on which it is based is petitioning activity protected by the First Amendment. UPMC argues that certain of the complained-of actions do not qualify as petitioning activity and that, in any event, the First Amendment does not apply to "sham" lawsuits.

The Noerr–Pennington doctrine derives from the First Amendment's guarantee of "the right of the people ... to petition the Government for a redress of grievances." U.S. CONST. Amend. I; United Mine Workers of America v. Pennington, 381 U.S. 657 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961). Under the doctrine, those who petition any department of the government for redress, including the judiciary, are generally immune from liability arising out of that petitioning conduct. Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

25

The Noerr–Pennington doctrine can protect against the tort liability imposed under the Civil Rights Act, 42 U.S.C. § 1983.  Herr v. Pequea Twp., 274 F.3d 109, 117 (3d Cir. 2001), abrogated on other grounds by United Artists Theatre Circuit v. Twp. of Warrington, 316 F.2d 392 (3d Cir. 2003).  The Noerr-Pennington doctrine applies to public entities and public officials, provided they are petitioning a distinct public entity that has the power to resolve the issue at stake.  Herr, 274 F.3d at 119; Mariana v. Fisher, 338 F.3d 189 (3d Cir. 2003).  In the context of petitioning the judiciary through litigation, courts have extended the doctrine to encompass activities that are incident to litigation.  Primetime 24 Jt. Venture v. Nat'l Broadcasting Comp., Inc., 219 F.3d 92, 100 (2d Cir. 2000) (collecting cases).  As noted by the City Defendants, and confirmed by the court's independent research, at least one federal court of appeals has specifically extended the doctrine's protection to public comments made attendant to litigation. Mercatus Group, LLC v. Lake Forest Hosp., 641 F.3d 834, 849-50 (7th Cir. 2011); New West, L.P. v. City of Joliet, 491 F.3d 717, 721-22 (7th Cir. 2007).   Outside the litigation context, the Supreme Court has stated that a "publicity campaign directed at the general public, seeking legislation or executive action, enjoys antitrust immunity even when the campaign employs unethical and deceptive methods."   Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 499-500 (1988).

The Noerr-Pennington doctrine does not apply when the litigation is a "sham." Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60–61 (1993). The sham exception includes an objective and subjective component and applies when the lawsuit is both objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits and when the lawsuit conceals an attempt to interfere directly with

26

the business relationships of a competitor. <u>Professional Real Estate Investors</u>, 508 U.S. at 60-61;

<u>In re Flonase Antitrust Litig.</u>, 795 F.Supp.2d 300, 309–310 & n.11 (E.D. Pa. 2011).

      With respect to this case, it is premature to decide whether, and to what extent, the

<u>Noerr-Pennington</u> doctrine applies.  It is also unnecessary to do so given that the court has

already determined that the appropriate course of action is to stay the instant litigation pending

resolution of the State Court Action, and any related proceedings.  Should this litigation be

reactivated following resolution of the State Court Action, the court will be able to assess the

legal applicability and factual scope of the doctrine.

      Even though there is no legal or factual dispute that the doctrine would apply to

the City Defendants' filing and prosecution of the State Court Action, if UPMC could establish

that the State Court Action was a sham, the exception would apply.  It would be wholly

inappropriate for this court to make any determination regarding the State Court Action's status

as a sham lawsuit while the State Court Action is pending before the Court of Common Pleas.  It

would likewise be premature for this court to decide to what extent the defendants' public

comments share the immunity afforded to the lawsuit itself under the <u>Noerr-Pennington</u> doctrine,

or benefit from their own immunity as petitioning activities directed at other branches of the

government.  There are factual issues regarding the source and context of some of those

comments, and there are legal issues regarding how far the immunity extends in this judicial

district.  The court will exercise its discretion to defer ruling on those, and any related, questions

until after the State Court Action, and any related proceedings, have been resolved.  <u>Mitsubishi</u>

<u>Heavy Indus., Ltd. v. General Co.</u>, 720 F.Supp.2d 1061 (W.D. Ark. 2010) (imposing a stay

because a victory in related lawsuit would establish that the litigation was not sham litigation

under the Noerr-Pennington doctrine); Skinder-Strauss Assoc. v. Mass. Continuing Legal Educ., Inc., 870 F.Supp. 8 (D. Mass. 1994) (similar).  At that time, the court can better evaluate the extent to which the doctrine applies in this case.

### 2.  **Sufficiency of Substantive Allegations**

Defendants each made a variety of arguments attacking the legal and factual sufficiency of UPMC's amended complaint.  Because the court already determined that it is appropriate to stay this matter pending resolution of the State Court Action under Fair Assessment, Younger and Noerr-Pennington, the court need only decide whether at least one claim pled by UPMC against each defendant survives the motion to dismiss standard such that this litigation will proceed in some form.  Because the court concludes that such claims were pled, any further rulings regarding the sufficiency of UPMC's amended complaint are similarly deferred.

This course of action is particularly appropriate given that it is likely, upon the conclusion of the State Court Action and reopening of this case, that additional facts and circumstances will have occurred.  Supplemental or amended pleadings are to be expected at that time.  In addition, certain claims asserted in the amended complaint may have been actually litigated in the State Court Action. (See 13-565, ECF No. 32 at 11, 14 (stating that "UPMC's invocation of the dormant Commerce Clause and the Fourteenth Amendment are defenses to the City's claims that UPMC is no longer an IPPC")); City of Pittsburgh v. UPMC, No. GD-13-005115 (Ct. Com. Pl., Alleg. Cnty.) (doc. no. 10) (UPMC's preliminary objections alleging that the State Court Action violates the dormant Commerce Clause and due process).  For all these

28

reasons, any advance rulings on defendants' particular challenges to UMPC's pleadings, beyond determining that at least one viable claim has been stated, would be superfluous.

### 3. __Immunity__

The City Defendants contend that the mayor is entitled to dismissal of the amended complaint pursuant to the defense of qualified immunity. Government officials who perform "discretionary functions" are entitled to the defense of qualified immunity for suits filed against them in their individual capacity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under that defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). To meet this test, generally "there must be sufficient precedent at the time of [the defendant's] action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001).

Given that the court otherwise determined that a stay of this litigation pending resolution of the State Court Action, and any related proceedings, is appropriate, this determination must be likewise held in abeyance. It would again be premature and improper for this court to pre-judge the merits of UMPC's claims before the State Court Action concludes. Upon reopening of this case, the court will entertain assertions of this defense at the appropriate time.

IV.  **Conclusion**

For all the reasons set forth above, this case will be stayed, and administratively closed, pending resolution of the ongoing litigation in the Court of Common Pleas of Allegheny County, Pennsylvania. The parties are to file a joint report with the court sixty days after issuance of this opinion, and every sixty days thereafter, setting forth the status of the State Court Action. The parties are directed to notify the court within seven days should the state court enter any order disposing of the State Court Action in its entirety.

An appropriate order will be filed contemporaneously with this opinion.

Dated:  October 25, 2013                                      BY THE COURT,


                                                             /s/ JOY FLOWERS CONTI
                                                             Joy Flowers Conti
                                                             Chief United States District Judge